## SNELL *v.* WASATCH & JORDAN VALLEY R. CO.

THE GRANT OF A PRIVATE RIGHT TO QUARRY ROCK FROM THE LANDS OF THE GRANTOR, with a right of way to remove the same, is not a grant of the exclusive possession of the land, or any possession, except for the sole purpose of enjoying the license and easement created by the grant. Such grantee can not authorize a railroad operated for the general public to be constructed over the land, even though the major part of its business be the transportation of the rock quarried under the license; if he does, the grantor, as the owner in fee, may maintain ejectment against it.

APPEAL from the third district court. The opinion states the facts.

*Sutherland & McBride*, for the appellants.

If the right to the possession and right of way were not in the plaintiffs at the trial, they could not recover; and as there is no dispute as to this deed to Taylor, that ended their case, though defendant did not connect itself with it.

It is a case of a plaintiff failing to make out his case. The plaintiff must show his right to recover—not the fact that the defendant had no right to remain. A right to the possession in a third party is always a good defense in ejectment for the party in possession. The only exception is when the title is in the government: 13 Cal. 291.

An outstanding title (to the possession) in a third person will prevent the plaintiff's recovery, though the defendant do not connect himself with it: 8 Cal. 165; 22 Id. 580.

In ejectment it is not necessary for defendant to show any title in himself; he may defend the action by showing title or right of possession in a third party: 22 Cal. 513; 23 Id. 528; 26 Id. 393.

The plaintiffs sued to recover the possession of the premises; the deed showed that they had no right to that possession, therefore they can not recover, and the deed was material. Its exclusion was therefore error, and the instructions based upon that must fall with that ruling.

The instruction asked by defendant and refused is based upon our theory that the plaintiffs, not having shown their ownership as alleged, must fail. Here are one hundred acres of land, and the right of way to and from it, of which they have not the shadow of right to the possession—and yet they have recovered it against a servant and employee of their grantee.

*Sheeks & Rawlins*, for the respondents.

The company built its road upon plaintiffs' land in 1872 to 1874. In 1877 plaintiffs granted to John Taylor the exclusive right to quarry stone upon and remove the same from a portion of some of the legal subdivisions upon which the road lies, with a right of way to remove said stone, the grant of

the right of way being limited to that upon which the right to quarry is granted. But the land upon which this license and easement are imposed is not coextensive with that belonging to plaintiffs and occupied by the road.

We rely upon the following propositions:

1. The grant to Taylor did not, as counsel seem to suppose, carry the right of possession from plaintiffs and vest it in Taylor exclusively.

2. As against all but Taylor and those occupying under him, pursuant to and for the sole purpose of enjoying the license and easement created by the grant, plaintiffs retained the right to possession.

3. Under the grant, Taylor could not authorize the company to occupy plaintiffs' land for any purpose other than in connection with quarrying and removing the stone.

4. It appears from defendant's answer (Record, p. 6) that it was not its sole purpose or business to carry stone for Taylor, but among other things, to carry mineral ores from Cottonwood canyon.

5. It nowhere appears that the possession which the answer admits to be that of the company was really the possession of Taylor.

6. The fact that Taylor procured the company to carry some of the stone over its road does not make it Taylor's servant or employee in the sense that its possession is Taylor's possession.

7. None of the foregoing propositions need any authorities to support them.

EMERSON, J.:

This is an action brought by the respondents, as tenants in common, to recover the possession of a strip of land extending through and across certain legal subdivisions set out in the complaint, to which the plaintiffs have the title, said strip of land being in the possession of the defendants, and used by them for its road-bed and track. The complaint alleges that the value of the use and occupation of the demanded premises is eight thousand dollars, and asks judgment for that amount, together with a restitution of the premises.

The answer denies that the plaintiffs are the owners or

seised of the premises in question, as alleged, or that the defendants without right withheld wrongfully or otherwise, and denies all damages for use and occupation excepting two hundred dollars.

The defendant also pleaded a license from the plaintiffs to use the land in question, and also set up that a certain rock quarry had been granted to one John Taylor, including the depot grounds in question, by the plaintiffs, and embracing said grounds, with the right of way to and from the same, and that defendant was in his employ, and that the occupation and use sued for are provided for in said conveyance; and that neither the said grounds nor the right of way used by the defendant belonged to them or either of them.

The cause was tried by a jury. At the close of the testimony, upon the request of the plaintiffs, the court instructed the jury to find a verdict for the plaintiffs, with damages assessed at two hundred dollars, the amount admitted in the answer. Judgment was entered upon this verdict.

The instructions given to the jury were excepted to by the defendant, and the refusal to give those asked by the defendant was also excepted to. The case is here on appeal from the judgment, based on the rulings of the court at the trial.

The plaintiffs, to maintain and prove the issues on their part, put in evidence a patent of the United States to Joseph J. Snell for land, including the premises described in the first count of plaintiffs' complaint, and bearing date November 3, 1876; a conveyance in due form of an undivided half thereof, dated September 2, 1876, from Joseph J. Snell to John W. Snell; a patent from the United States, dated May 6, 1874, to George H. Snell, of the premises described in the second count of the plaintiffs' complaint; and a conveyance in due form, dated November 4, 1877, from George H. Snell to said plaintiffs, conveying the premises mentioned and described in said last-stated patent.

Said plaintiffs, further to maintain and prove the issue on their part, introduced as witnesses Doremus, said plaintiffs, and George H. Snell, who testified substantially that the Wasatch and Jordan Valley Railway Company, between 1872 and 1874, constructed a railroad, three-feet gauge, from Sandy to Wasatch station, which latter place is on and near the east-

erly line of the premises mentioned in the second count of plaintiffs' complaint, and on the line in said complaint described, and thenceforth to the commencement of this action, occupied and operated a railroad thereon, occupying the premises as set forth in said complaint.

The witness Doremus further testified that sometime in 1879, at the instance of the defendant, he made a survey of the land described in the complaint, occupied by defendant, the object of such survey, as stated by Mr. Goss, the superintendent of defendant railway, being to make a settlement with plaintiffs or to condemn the land referred to.

Joseph J. Snell testified that he commenced residing upon the land described in his patent in 1870, and G. H. Snell; that he made entry upon the land in his patent about one year prior to its date. Both testified that they had occupied their respective tracts of land prior to the construction of the railroad track and improvements thereon, but were absent therefrom, and in Salt Lake City, at the time it was being constructed; heard rumors that it was being constructed; did not know who constituted defendant company, except that Mr. Jennings, who resided in Salt Lake City, was president; that neither of them ever consented to the location or construction of the railroad on said land.

On cross-examination they testified that at the time said road was being built, or before, they had no conversation with defendant or its agents, and expressed to them no objections to the same. Joseph J. Snell testified that his recollection was, that after they got about half-way through this land they stopped the constructing during about six months; that sometime during that time he was on the land, and saw the railroad. It was further in evidence that the terminal points of said railroad were Sandy and Alta, in Salt Lake county, Utah; that portion of the same east of plaintiffs' land was operated by animals, and the remainder by locomotives; that said road carried passengers as well as freight between these points.

The defendant, to maintain and prove the issue on its part, offered in evidence the following indenture:

"This indenture, made the fifth day of November, in the year of our Lord one thousand eight hundred and seventy-

seven, between John W. Snell, Joseph J. Snell, and Geo. H. Snell, of Salt Lake City, in the county of Salt Lake, and territory of Utah, parties of the first part, and John Taylor, trustee in trust for the Church of Jesus Christ of Latter-day Saints, of Salt Lake City, in the county of Salt Lake, and territory aforesaid, the party of the second part, witnesseth: that the said parties of the first part, for and in consideration of the sum of one thousand (1,000) dollars, lawful money of the United States of America, to them in hand paid by said party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained, sold, conveyed, and confirmed, and by these presents do grant, bargain, sell, convey, and confirm, unto the said party of the second part, and to his successors in the office of trustee in trust for the Church of Jesus Christ of Latter-day Saints, forever, the exclusive right to quarry and remove the rocks lying and being within the limits of the following-described pieces or parcels of land, to wit: the north half of the south-east quarter, and the north half of the north half of the south half of the south-east quarter of section seven (7), in township three (3), south of range two (2) east, in the district of land subject to sale at Salt Lake City, Utah territory, containing one hundred (100) acres.   Together with the privilege to erect and occupy sheds or other buildings for the use and accommodation of all teams and workmen employed in quarrying and hauling said rock, or in any way associated therewith.    Also the free right of way over and across any part of the said described premises, in any direction which may be requisite or necessary for the removal of said rock, or and (any) other rock that is located above said claim or tract of land, which the said party of the second part, or their successors in office, as aforesaid, may desire to remove over or across the said described premises."

Said instrument was properly executed, acknowledged, and recorded.

Plaintiffs' counsel objected to the admission of said indenture in evidence, upon the ground that the same was immaterial and irrelevant; upon which the court admitted said indenture in evidence, subject to be afterwards excluded if de-

fcndant failed to produce evidence connecting itself with the right conveyed by said indenture.

And the said defendant, further to maintain and prove the issues on its part, introduced as a witness James Livingstone, who testified in substance that he knew the premises mentioned in the foregoing indenture, and since about 1876 had been superintendent for and in the employ of the grantee, to work the granite quarry on said premises, to obtain rock for the temple in Salt Lake City; that all the rock so quarried after the construction of the defendant's railroad has been transported from said quarry over said road from Wasatch station, consigned to said grantee in said indenture; that the rock so transported has been from the first at least half the entire freight carried by said road, and averaged about six hundred car-loads per year, each car-load being about eight tons.

Defendant thereupon, without further or other proof, rested its case.

Wherefore the plaintiffs' attorneys moved the court to strike out the evidence, the said indenture, on the ground that the same was irrelevant and immaterial, and that defendant had not connected itself with the rights mentioned in said indenture, to which the counsel for the defendant objected. The court granted said motion, and ruled and decided that said indenture was wholly immaterial, and that defendant had not connected itself with the right granted by said indenture; and to said ruling the said defendant, by its attorney, then and there excepted.

Said court, at the request of said plaintiffs' attorneys, and notwithstanding an objection made by defendant's counsel, instructed the jury as follows: "You are instructed to return a verdict for plaintiffs for the restitution of the property described in the plaintiffs' complaint, which you may find that the defendant withholds, together with two hundred dollars damages." To which instruction the defendant's attorneys then and there excepted.

Said court refused the following instruction requested by said defendant's attorneys: "The jury are instructed to find for the defendant, because the plaintiffs have not shown such joint title in themselves as entitles them to maintain this ac-

tion." And to said refusal said defendant, by its attorneys, then and there excepted.

There was no error in striking out from the evidence the indenture referred to. It was neither material nor relevant. It appears that the defendant entered upon and took possession of the demanded premises, and built their railroad upon it, between 1872 and 1874, some years before the grant was given under which they attempt to justify the holding. The demanded premises is a strip of land extending across the premises described in said indenture, and other legal subdivisions not mentioned in it. The road was not constructed by or for the grantee, or for his use or benefit, any more than that of the public or any other patron of the road.

The defendant is a common carrier, doing a general business as such, for any and all who may require its services and will pay its charges, and as a part of its general business it transported rock delivered to it and consigned to Taylor. In doing this it was not his servant in any such sense as would give it any rights under the grant.

The defendant placed its whole defense upon the grant of the plaintiffs to Taylor, with this out of the case and withdrawn from the jury. The court properly instructed the jury to find for the plaintiff, and to assess the damages at the sum confessed by the answer.

The appellant contends that the instrument excluded was material, and should have been permitted to go to the jury, for the reason that it showed an outstanding title in a third person.

The grant did not give to Taylor an exclusive right of possession, or the right to any possession disconnected from his right to quarry and take away rock from and over a specified portion of the plaintiffs' premises. He can not authorize the defendant or any one else to occupy plaintiffs' land for any other purpose than that specified in the grant. The instrument is a grant of a private right of way, connected with the right to quarry, and plaintiffs retained the possession as against all but the grantee and those occupying under him pursuant to the grant, and for the sole purpose of enjoying the license and easement created by it. The fee to the soil is still in the plaintiffs.

The fact that the plaintiffs had granted to Taylor the right to quarry rock on their land, and a right of way to and from the quarry for the purpose of its removal, does not prevent them from maintaining ejectment against the defendant for the unauthorized use of the land. The owner of the soil over which even a public highway passes may maintain ejectment for an unauthorized use and occupation of the highway.

The decisions, rulings, and instructions of the court were right, and the judgment is affirmed.

HUNTER, C. J., and TWISS, J., concurred.