## CHARLESTON

JACKSON v. BIG SANDY &C. R. R. CO.

Submitted June 13, 1907.    Decided November 26, 1907.

1. RAILROADS—*Grants of Rights of Way—Extent and Use of Rights Acquired—Right of Way Annexed to Mining Rights.*

   Railroad rights of way, annexed and subsidiary to mining rights, cannot be used for other purposes, such as the business of carrying passengers and freight generally.   (p. 20.)

2. INJUNCTION—*Subjects of Protection and Relief—Railroad on Mining Right of Way—Operation as Common Carriers.*

   Equity has jurisdiction, independently of the constitutional inhibition of the taking of private property for public use, without payment of compensation or security therefor, to enjoin the operation of a railroad, built on a mining right of way, as a common carrier, no possessory remedy at law being available for ejection from the premises.   (p. 22.)

3. EMINENT DOMAIN—*Remedies of Owners of Property—Jurisdiction of Equity—Restraining Unauthorized Use of Railroad Rights of Way Granted.*

   The constitutional inhibition of taking private property for public use, without compensation, gives equity jurisdiction to prevent such unauthorized use of a mining right of way or railroad, since the law affords no adequate remedy for the possession and use of the property, deprivation of which amounts in law to a taking thereof. (p. 23.)

4. EQUITY—*Pleading—Answer—Abatement for Want of Parties.*

   An answer to a bill, seeking abatement for want of necessary parties, which fails to aver facts, showing an interest, on the part of the absent party, in the subject matter of the bill, that will be affected by the achievement of the object of the suit, is insufficient for the purpose.   (p. 24.)

Appeal from Circuit Court, Wayne County.

Bill by Virginia Jackson against the Big Sandy, East Lynn & Guyan Railroad Company.   Decree for plaintiff, and defendant appeals.

*Affirmed.*

HOLT & DUNCAN, for appellant.

WILLIAM FRY and CAMPBELL, HEFFLEY & DAVIS, for appellee.

Poffenbarger, Judge:

The questions presented here are whether a railroad built on a right of way granted only for a railroad for the transportation of minerals of the grantee, to be taken from the land over which the right of way is, can be operated as a common carrier, and, if not, whether equity will enjoin such use thereof.

The plaintiff, owner of a small tract of land, containing about three acres, which came to her out of a tract of 62 7-8 acres, once owned by Samuel Osburn, and another tract, the two having an aggregate area of 62 1-2 acres, obtained from the judge of the circuit court of Wayne county, on the 6th day of May, 1903, an injunction, restraining and inhibiting the Big Sandy, East Lynn and Guyan Railroad Company from proceeding further to enter upon said tracts, on a bill alleging that said company, without having in any way acquired a right of way over the same, and without her consent and over her protest, had entered upon and taken possession of a portion of her land and was then, and had been, for some time, engaged in building and constructing its railroad thereon.

On February 24, 1905, the defendant filed an answer, denying that it had built, was building, or intended to build, any railroad on any portion of any of plaintiff's land, and also that any railroad had been built on the larger of the two tracts; but averring that a railroad had been built by the East Lynn Coal Company over said three acre tract, on a right of way, granted by said Samuel Osburn to C. Fry and B. J. Pritchard, by deed dated the 8th day of May, 1890, by which Osburn had conveyed to said Fry and Pritchard all metals, coals, iron ores, fireclay, stone for building purposes, gas and oil, in, under and upon said 62 7-8 acre tract of land which then included plaintiff's said three acre tract, together "with the right of way for railroads or other roads over and through the surface thereof for the transportation to market of said minerals and mineral substances and products, whether in the raw or manufactured state," which deed was exhibited with the answer. It was further averred that the minerals and rights of way, so granted, had become the property of said East Lynn Coal Company. On the 8th day of May, 1905, a supplemental

bill, alleging the completion of said railroad and its oper-
ation as a common carrier, and praying that the defend-
ant be enjoined from operating the same over and through
said lands, or in any manner entering thereon, until it
should have acquired the right of way by purchase or con-
demnation, was filed in court and an injunction, in. con-
formity with the prayer thereof, was awarded.  To this
bill, an answer was filed, admitting the completion of the
railroad and its operation by the defendant as alleged, but
denying that said company had built it or owned it, and aver-
ring that the same had been built by the East Lynn Coal
Company and was operated by the defendant, under an
agreement or arrangement with the coal company, as a
common carrier, as well as a carrier of coals from the mines
of the East Lynn Coal Company on said tract of land,
and claiming the right to so operate it.   This appeal is
from an order refusing to dissolve said last mentioned in-
junction.

Conceding the right of the coal company, after having
constructed its railroad, to lease the same to the appellant,
which seems to be admitted by counsel for the appellee, it
does not follow that the lessee may use or operate it for a
purpose other than that for which the way was granted.
The coal company could not vest in the railroad company,
by lease or otherwise, any greater right or interest in the
land, or subject it to a heavier burden or more extensive
easement, than the clause in the deed, granting the ease-
ment, passed or authorized.   It could vest in another only
such right as it had acquired.   The easement granted is de-
fined and limited by the terms of the grant.   It authorizes
the construction, maintenance and operation of railroads on
the land for the transportation to market of the mineral and
mineral substances and products granted by the deed, and
nothing more, in the absence of circumstances, not here
disclosed, calling for an interpretation or construction, ac-
cordant with the true intent and meaning of the parties,
giving a greater right of use.   A railroad to be used merely
as an instrumentality in the marketing of the coal granted,
would impose a burden upon the land, shorter in duration
and lighter in character, than a railroad operated as a com-
mon carrier.   In point of time the operation of the road

would be coextensive with the working of the mines, commencing with the opening of the mines, ceasing temporarily while they are closed, and terminating altogether upon the exhaustion of the mines; and, while in operation, the number of cars and trains run over the land would depend upon the extent of the mining operations and the quantity of the output. On the other hand, a common carrier road is in constant operation, doing a regular and a much heavier traffic, carrying, in addition to the output of the mines, a large amount of freight not emanating from them, as well as passengers, all of which necessitates the running of heavier and more numerous trains, and this burden would be indefinite in point of time. It might, and probably would, be permanent. Moreover, such a railroad requires better construction and maintenance, a better roadbed, grade, equipment and speed, involving graver injury to the surface and more frequent interruptions, in divers forms, to the occupancy and use of the land for other purposes. To the earnest contention of counsel for the appellant, that the grant of a right of way for mining purposes, impliedly or otherwise, authorizes the use of it for general railroad purposes, the considerations just mentioned seem to respond sufficiently, but the conclusion to which they unerringly lead has long ago found expression in a canon of interpretation and judicial precedents. "Rights of way annexed to rights to mine, or granted for the purpose of removing and transporting minerals from and materials to the mine, may not be used for other purposes, as for general railroad purposes." Barringer and Adams, Mines & Mining, 584. "It being clear, from the above facts, that the purpose of the provisions in the decree, relating to the building of branch railroads, was to afford to the owners of the coal property facilities for removing and marketing the coal upon it, said provisions did not justify the attempt to build a branch railroad, not necessary, and not to be used as an appurtenance to the coal property." *Republic I. Works* v. *Burgwin*, 139 Pa. St. 439. "The grant of a private right to quarry rock from the lands of the grantor, with a right of way to remove the same, is not a grant of the exclusive possession of the land, or any possession, except for the sole purpose of enjoying the license and easement created by the grant.

Such grantee can not authorize a railroad operated for the general public to be constructed over the land, even though the major part of its business be the transportation of the rock quarried under the license; if he does, the grantor, as the owner in fee, may maintain ejectment against it." *Snell* v. *Railway Co.*, 3 Utah 192.

The observation just expressed, respecting the consequences of the perversion of the right of way to purposes aside from, and beyond, those specified in the grant, taken in connection with the character of the defendant, it being a corporation organized for the carrying on of business of a public nature, the transportation of passengers and freight generally, have important bearing on the question of remedy, plainly demonstrating that the result is the subjection of private property to a public use without compensation, in violation of the constitution of the state. Such use of the right of way is not, and cannot be, a mere incident of its use in connection with mining. To hold that it is, would make the incident broader than the thing to which it is said to be incident, both in respect to its nature and the burden it imposes upon the land; and this is true notwithstanding the duration of the burden would be limited to correspond with the operation of the road for mining purposes. The character of the use is not determined by the length of time. It depends upon the interest affected, the rights or advantages of which the land owner is deprived, on the one hand, and those bestowed upon the general public, on the other. Neither a railroad corporation nor a railroad is required to be perpetual, and whether it operates as a common carrier for ten years or fifty years, the nature of its business is the same. Subjection of private property to the uses and purposes of a common carrier amounts to a taking thereof within the meaning of the constitution, for prevention of which equity interposes by injunction. *Foley* v. *County Court*, 54 W. Va. 16; *Spencer* v. *Point Pleasant &c. R. R. Co.*, 23 W. Va, 406; *Arbends* v. *Wheeling &c. R. R. Co.*, 33 W. Va. 1; *Taylor* v. *B. & O. R. R. Co.*, 33 W. Va. 39; *Watson* v. *Fairmont &c. R. R. Co.*, 49 W. Va. 528. All these decisions say an action sounding in damages, such as *assumpsit* or trespass on the case, is not an adequate remedy for the taking of private property for public use.

This is obvious, since *assumpsit* would treat the land as sold, given up by its owner without having been paid for it, in exchange for a right of action for money which might prove worthless, owing to insolvency of the corporation or person taking it, or other adventitious circumstances. The constitution inhibits the taking of land for public use, until compensation therefor shall have been paid or secured, from which it is plain that no remedy allows the land to be used for such purpose before payment of compensation is adequate. In order to enforce the mandate of the constitution, the courts must give a remedy that will secure to the citizen the possession and use of his land until compensation is paid or payment thereof secured.

Independently of this inhibition of the constitution, calling for injunction to protect the possession, there is equity jurisdiction on another ground. Possession of the right of way for mining purposes under the grant, precludes resort to ejectment or unlawful entry and detainer. The relation subsisting between the parties is analogous to that of landlord and tenant. In attempting to use the railroad, rightfully constructed for a limited purpose, transportation of coal from the mines, as a common carrier, the railroad company, as tenant, sub-tenant, licenses or sub-licenses, is doing an act on the premises which the license or grant of privileges does not authorize. It is an act in excess of the rights conferred upon the tenant. In all such cases, equity has jurisdiction to restrain and confine the tenant or licensee within the scope of the tenancy or license. *Carnegie Natural Gas Co.* v. *The South Penn Oil Co.*; 56 W. Va. 402, 415; *Oil Co.* v. *Oil Co.*, 47 W. Va. 84; *Bettman* v. *Harness*, 42 W. Va. 433; *West Virginia &c. Co.* v. *Vinal*, 14 W. Va. 637.

In view of this relation of parties, the principles here adverted to, and the promptness with which the plaintiff sought relief, she having filed her original bill before the railroad was built, and her supplemental bill on completion thereof, and vigorously and diligently prosecuted the suit, the action of the court, in overruling the motion to dissolve the injunction, in respect to the operation of the railroad as a common carrier, was manifestly proper and right, unless failure to make the East Lynn Coal Company

a party, was cause for dissolving it, as has been suggested in argument. The right to build the railroad and use it for mining purposes only is not contested. The bill takes no notice of its character as a mining road. It proceeds against the defendant as the operator of a common carrier and against the road as a railroad constructed and used for general purposes. Its character as a mining road is brought into the case by the answers, but no affirmative relief is asked in respect thereto. They are merely defensive answers against bills seeking prevention of the use of the road for general purposes, a matter outside of, and beyond, any rights conferred by the grant, and therefore, a matter in which the East Lynn Coal Company has no interest whatever. As determined by the allegations of the bills, admitted in the answers, the defendant is a trespasser, in that it has acted in excess of the rights, conferred upon the party under whom it claims. Neither it nor the East Lynn Coal Company has obtained from the land owner a right of way for general railroad purposes. If it be conceded that the answer sets up a claim of right on the part of the coal company to lease the railroad built by it, for use in the manner in which the appellant is using it, by the averment that it has leased the same for such a purpose, both lessor and lessee are thus shown to be wrongdoers, for no acquisition of the right claimed is shown. On the contrary, it is thus revealed that the basis for the claim is a granted right of an entirely different character. To obtain abatement or suspension of proceedings in equity in the nature of an abatement, on the ground of want of necessary parties, it must appear that the absent party has an interest in the subject matter of the suit that will be affected by the achievement of its object. It is not enough to show that he merely claims an interest. Facts must be disclosed from which the court can see that he has such an interest, if the statements of fact are true. Though want of necessary parties in equity may not constitute ground for abatement in the common law sense of the term, it operates to suspend or delay the suit, until the defect is cured, and the plea or answer setting it up for this purpose ought to be tested as to its sufficiency by the rules of pleading. The statement of a mere conclusion of law

is not sufficient in a declaration, plea, bill, answer or any other paper known in pleading. In order to avail himself of a legal principle for an abatement or any purpose, a party must set forth sufficient facts to bring himself within that principle. *Riley* v. *Jarvis*, 43 W. Va. 43; *Quarrier* v. *Peabody Ins. Co.*, 10 W. Va. 507; *Horton v. Towns*, 6 Leigh 47; *Patton* v. *Elk River &c. Co.*, 13 W. Va. 255; Hogg's Eq. Pro. 277.

As the bill seeks an injunction to the operation of the railroad as a common carrier and not otherwise, and the injunction follows the prayer of the bill strictly, and no complaint is made here on the ground of failure to so modify the order as to permit the operation of the road as a mining road, or except such use thereof from its terms, the argument on both sides being confined to the contention as to the right to use the road for general purposes, we deem it unnecessary to inquire whether the order should be modified. As it is merely interlocutory, the court below can so modify it any time to prevent interference with any rights the appellant possesses under the easement granted to Fry and Pritchard, and now held by the East Lynn Coal Company.

Seeing no error in the order complained of, we affirm it.

*Affirmed.*