270 P.2d 456

### GRAHAM v. STREET et al.

### No. 7883.

Supreme Court of Utah.

May 6, 1954.

White, Wright & Arnovitz, Mulliner, Prince & Mulliner, Salt Lake City, for appellant.

George B. Stanley, Heber, David L. McKay, Salt Lake City, for respondent.

McDONOUGH, Justice.

In May of 1944, respondent and cross-appellant Graham commenced an action against the appellants herein, alleging that Graham and defendant Street had entered into a partnership for the purpose of purchasing and operating certain equipment; that the profits were to be equally divided; that defendants Street and Siegel conspired to exclude Graham from the partnership and defraud him of his interest; and praying that an accounting be had of the partnership dealings and transactions and for general relief. The lower court entered an interlocutory decree, finding the facts in accordance with the plaintiff's allegations, requiring an accounting, and providing that the court should retain jurisdiction "to settle all accounts between the parties * * *, and to make such further orders, judgments and decrees" as might be just and equitable. On appeal this court affirmed the interlocutory decree. Graham v. Street, 109 Utah 460, 166 P.2d 524.

The case was remitted to the lower court and defendants Street and Siegel entered an accounting pursuant to the interlocutory decree. To this accounting Graham filed a pleading,—"Objections to Accounting

by Defendants and Supplemental Complaint"—which, inter alia, prayed that an "accounting" should be had on a rental basis with total damages in excess of $140,000. Over a motion to strike by defendants, the lower court allowed the pleading to be filed, and thereupon defendants brought an action in this court to compel the lower court to strike from the above pleading all allegations that damages should be based on the rental value of the equipment. Street v. Fourth Judicial District Court, Utah County, 113 Utah 60, 191 P.2d 153. We held that the defendant court had not violated any mandate from us; that the proper method of "accounting" was not before us, either on appeal from the interlocutory decree or in the mandamus proceedings; that the principal issue in the appeal from the interlocutory decree was whether a partnership existed and whether Graham was entitled to relief of any kind; that it was not our purpose to restrict the lower court in determining a remedy and that it had jurisdiction "to make such further orders, judgments, and decrees as might be just and equitable"; that defendants Street and Siegel were complaining before they were hurt; and that if either party was "aggrieved by any ruling of the defendant court, they will have an opportunity to have it reviewed here on appeal from the final decree."

On July 12, 1952, the lower court made findings of fact and conclusions of law and entered its final decree. All parties appeal. The findings of fact necessary for a discussion of this phase of the case are set forth as follows:[1]

"1. On June 15, 1945, this court * * * entered its Findings of Fact and Conclusions of Law and Interlocutory Decree, whereby the defendants and each of them were required to make an accounting * * *.

"2. On September 3, 1946, the said defendants severally filed accountings * * *, which accounting correctly reflects all of the receipts to the partnership Graham and Street * * * [with exceptions specified by the court]

"6. From August 6, 1943, to December 26, 1944, the use of the assets of the partnership of Graham and Street, and the conduct of the partnership business, were carried on by Street, assisted by Siegel, with reasonable diligence, with the exception of 34 days.

"7. The rental value of the said equipment during the idle time [set forth in the preceding paragraph] was $1,932.00.

"12. The plaintiff Graham, by a conspiracy between the two defend-

1. For a detailed discussion of the facts; see the previous appeals, supra.

ants, was deprived of the right as a partner to participate in the control and management of the partnership and to plan and to assist in the execution of its purposes.

"13. From the inception of the said conspiracy the defendants Street and Siegel acted with equal purpose and intent and with equal effect to defraud Graham.

"15. By the deprivation of plaintiff's rights by the defendants, plaintiff was subjected to distresses and anxieties.

"16. The plaintiff Graham had experience and wide personal contacts which were denied the partnership by the acts of defendants.

"17. The plaintiff suffered actual damages * * * in the sum of $5,000.00.

"18. The deprivation of plaintiff's rights, hereinbefore set forth, by the defendants was malicious, fraudulent, reckless, wanton, willful, and oppressive.

"25. There is due and owing the plaintiff the sum of $2,974.01 as his share of the partnership net earnings, with interest thereon from January 12, 1945 [the date the equipment was sold, the partnership terminated, and an accounting was due plaintiff], in the sum of $1,338.38, and in addition,

$5,000.00 as compensatory damages and $5,000.00 punitive damages."

■■ Plaintiff Graham on cross-appeal contends that the lower court erred in refusing damages on a rental basis, and plaintiff's brief on this appeal is devoted almost exclusively to argument of the proposition that since the lower court found the partnership property was used by defendants Street and Siegel in furtherance of the conspiracy to exclude and defraud Graham of his interest in the partnership, and since defendant Siegel did not hold the position of a partner and defendant Street acted outside the scope of partnership authority, there is no basis upon which they may account as partners, but rather both Siegel and Street should be liable to the Graham-Street partnership entity in a possessory action for the rental value of the equipment. There is no merit in this contention. Although we refused to discuss the matter in the mandamus proceedings since the question was prematurely submitted, our affirmance in the appeal from the interlocutory decree of the lower court's finding that a partnership was established and was not dissolved during the entire time the equipment was utilized by the parties, during which time defendant Street, as one of the partners, used and operated the equipment, compels the conclusion that the proper remedy is that of a partnership accounting. It would be illogical to hold that a partner possessed and operated the equipment for the benefit of the partner-

ship, and then say that the equipment had been wrongfully appropriated giving rise to a possessory action. The legal fiction of a partnership entity cannot be carried to such extremes. Plaintiff made little or no monetary investment in the partnership, his time was devoted to his private affairs not to partnership matters, and his major contribution to the partnership was allowing Street to complete several contracts of speculative value which plaintiff had obtained prior to the partnership agreement. True, we affirmed the finding that defendants conspired to defraud plaintiff of his interest; nevertheless, such finding would not support a judgment for damages based upon an imagined employment of the equipment wholly foreign to the purposes of the partnership. The accounting, which treats the operation of the equipment as having been for the benefit of the partnership, allowing plaintiff one-half the net profit, is substantial compensation for plaintiff's limited efforts, complying with the maxim expressed in the former appeal as follows: "Equity will not permit a party in a relationship of trust and confidence to profit from his own wrong."

Although defendants Street and Siegel submitted separate briefs in this appeal, the assignments of error follow substantially the same lines and we shall treat them concurrently. Defendants first object to the allowance of $5,000 compensatory damages. They contend that these damages were not pleaded and are utterly without support in the evidence.

This contention must be sustained. The Rules of Civil Procedure, Rule 9(g), Utah Code Ann.1953, require: "When items of special damage are claimed, they shall be specifically stated." Although we affirmed the lower court's jurisdiction "to make further orders, judgments and decrees" as might be just and equitable, and although the Rules of Civil Procedure are to be liberally construed, some degree of specificity must be had in order to guide the parties and the court in their preparation and deliberations. The pitfall of the contrary view is represented by the action of the lower court in the present case where the compensatory damages were grounded on highly speculative matters,—distress, anxiety, and the effect on profits if Graham's experience and contacts had been utilized—, which, according to defendants' contention, not denied by plaintiff, were unsupported by proof upon which the court could base an intelligent decree. The rule is stated in 4 Sutherland Damages, 4th Ed., Sec. 1175, as follows: "Only such damages are recoverable as are shown with reasonable certainty to have been sustained. Remote, contingent and conjectural losses will not be considered."

Defendants next contend that the court erred in allowing $5,000 punitive damages. We agree. As was the case with compensatory damages, there are no specific pleadings, only a general allegation of fraud in the amended complaint. Standing alone, the failure to set forth a specific pleading may not be fatal since the dam-

ages may follow as a conclusion of law from the allegation of fraud, 15 Am.Jur., Damages, Sec. 304; however, the general rule is that there can be no punitive damages without compensatory damages based on the tort. Gilham v. Devereaux, 67 Mont. 75, 214 P. 606, 33 A.L.R. 381. And see Falkenburg v. Neff, 72 Utah 258, 269 P. 1008; Evans v. Gaisford, Utah, 247 P.2d 431; and cases cited in annotation in 33 A.L.R. 384. Hence, the failure to allege and prove a tort giving rise to compensatory damage vitiates the claim for punitive damage.

■ There is another reason why neither compensatory nor punitive damages should have been allowed. The Uniform Partnership Act, Utah Code Ann.1953, 48–1–28, establishes in each partner an indefeasible right to dissolve the partnership even where the partners covenant that the partnership will continue for a number of years, the only consequence being that in a partnership for a definite term the dissolving partner subjects himself to a claim for damages for breach of contract and for an accounting. Atha v. Atha, 303 Mich. 611, 6 N.W. 2d 897. This being so in a partnership for a definite term, a fortiori in a partnership at will, where an accounting must be the exclusive remedy since no contract has been breached. Normally, the accounting encompasses that interval between formation of the partnership and the time when actual notice is brought home to the partner that the relationship is to be dissolved. Fisher v. Fisher, 83 Cal.App.2d 357, 188 P.2d 802. However, a different situation is presented where the expulsion is fraudulent and there is continued use of the partnership assets. The remedy is stated in Nuland v. Pruyn, Cal.App., 216 P.2d 526, 533, affirmed 99 Cal.App.2d 603, 222 P.2d 261, as follows: "[A rule applies] based upon an assumption of a continued partnership, with full participation in profits according to the ratio set up in the articles of partnership, at least for the period from the wrongful expulsion to actual dissolution by circumstances or decree of court." It is apparent that as a basis for liability the lower court applied the foregoing theory in compliance with the opinion of this court expressed in the appeal from the interlocutory decree, supra, where we said:

"In this case Street used property belonging to the partnership, treating it as belonging to Siegel, refusing to account to Graham for the moneys collected for the use of the tractor, but the property will in equity be considered as being used for the benefit of the Graham-Street partnership and accounting of profits required to be made to this partnership.

"If the partnership ceased to exist in fact by the conduct Street brought home to Graham * * *, equity will nevertheless treat the partnership as existing and require an accounting of the profits."

The lower court's attempt to include compensatory and punitive damages must be

overruled as being inconsistent with the basic theory of liability.

As a further assignment of error, defendants contend that the charge of $1,-932 for so-called "idle time" of the equipment should not have been allowed. The basis for this charge is found in findings number 6 and 7, hereinabove set forth, which findings are subject to the objection of complete failure of pleading and proof. Moreover, we have determined that the theory of this case is a partnership accounting,—an equal division of net profits—, and nothing is presented by way of agreement or otherwise which leads to the conclusion that the defendants should be liable for failure to utilize the equipment on each working day throughout the partnership term. Further, "idle time" of thirty-four days during a term of approximately seventeen months would appear to be a satisfactory record, particularly in view of the nature of the work, adverse weather conditions placing a natural limitation on the excavations, and the conditions of the equipment, requiring frequent repairs. We therefore overrule the findings of the lower court in this regard.

The final contention, which has merit, is that it was error to charge interest on the balance of the account of the partnership accounting as set forth in finding No. 25, above. Defendants argue that interest should not be charged until a balance is struck; that the lower court found the accounting to be substantially correct; and

that the account would have been settled but for the contentions of the plaintiff that the accounting should be disregarded entirely and exorbitant amounts paid in lieu thereof as rental value for the equipment. We agree that the lower court erred in charging interest during the entire period from January 12, 1945, the date the partnership was terminated and an accounting was due, to July 12, 1952, the date when judgment was entered. It is apparent that plaintiff was responsible for the delay after the accounting was entered on September 3, 1946, by reason of the attempt to invoke an erroneous theory of liability, and defendants should not be charged with interest after this date. A formal tender by defendants at that time of the amount shown to be due plaintiff, considering the tremendous disparity in the accounting as tendered by defendants and the damages demanded by plaintiff in excess of $140,000, would palpably have been futile. However, we think it properly within the discretion of the lower court to allow interest from January 12, 1945 to September 3, 1946. The rule is stated in 40 Am.Jur., Partnership, Sec. 353 as follows:

"While it is impossible to lay down any unbending rule on the question whether interest should be allowed or disallowed on partnership accounts, the general rule appears to be that in the absence of an agreement to the contrary, interest is not to be allowed on partnership accounts until after a balance is struck, but may be charged if

under the circumstances of the particular case the equities so require. Its allowance or disallowance is, to a large extent, discretionary with the court, and depends largely on the circumstances of the particular case."

The case is reversed and remanded with instructions to enter a decree in accordance with the views herein expressed. Costs to appellants.

CROCKETT and WADE, JJ., concur.

HENRIOD and WORTHEN, JJ., do not participate herein.