326 P.2d 717

Heber W. GLENN, Plaintiff and Appellant,

v.

Rena S. PLAYER, sometimes known as Serena Player, Defendant and Respondent.

No. 8780.

Supreme Court of Utah.

June 9, 1958.

Backman, Backman & Clark, Salt Lake City, for appellant.

Ray, Quinney & Nebeker, W. Douglas Allen, C. Preston Allen, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from the dismissal of plaintiff's action for specific performance of a contract to convey real property. Affirmed, with costs to defendant.

On February 11, 1942, plaintiff agreed to buy land the title to which lay solely in the name of C. F. Player, defendant's husband. Defendant had no interest in the property save an inchoate statutory one predicated on her outliving her husband. Both signed the contract along with plaintiff, who paid $1,000 down and agreed to pay the $1,600 balance within six months, together with taxes, pro-rated for the year. Plaintiff took possession and removed a quantity of gravel, but relinquished such possession at the end of the six months' period and has never since reoccupied the land or used it in any way. He failed to exercise an option to take title to one of two tracts contained in the contract, upon payment of a specified amount. In May, 1942, plaintiff asked for deeds to the land but none was forthcoming. Thereafter, and until March, 1956, 14 years later, when demand was made for a conveyance upon payment of the $1,600 balance, plaintiff at no time contacted defendant, at no time offered to pay anything and paid no taxes whatever, although he did record the contract in 1949.

Since plaintiff relinquished possession of the property, defendant, or defendant and her husband jointly, have had possession of the property and their son has farmed it continuously ever since. In 1951 Mr. Player, fee owner, died and the probate of his estate was completed in May, 1953, defendant having had the land distributed to her under the terms of her husband's will, and plaintiff having failed to file any claim for specific performance or damages in said probate,[1] although notice to creditors had been published regularly. It is common

1. See Title 75–11–26, 27 and 29, Utah Code Annotated 1953.

430

knowledge and plaintiff admits that since 1942 property values have increased greatly in the area, and in 1953, shortly after the property had been distributed to her, defendant optioned most of it for sale to others and the plaintiff still did nothing to assert any claim until three years thereafter, or until five years after the death of the fee owner.

■ It seems obvious that to require specific performance at this late date under the circumstances related would not only result in great disadvantage to defendant by way of damages assertable by her vendees, by virtue of interest lost on the $1,600 balance over a 14 year period, and the payment of taxes over the same period, none of which plaintiff offered to pay when he made demand for conveyance, but would do violence to the well known maxim that he who seeks equity must do equity.

■ The record plentifully supports the trial court's finding in favor of defendant, and the believable facts, which we consider fairly abstracted above, compel us in this equity case to affirm the lower court, since they clearly preponderate in support of its conclusion.

Plaintiff urges that in equity 1) the contract should be specifically enforced, 2) that the delay was insufficient to deny such relief, 3) that the down payment, being a part performance entitled plaintiff to the relief, 4) that at least the option feature of the contract should be enforced as a matter of right, and 5) that the plaintiff was not obligated to file any claim in the probate proceedings incident to the death of plaintiff's husband.

To these contentions, one of the equitable defenses urged by defendant inescapably seems to answer all,—the defense of laches. Most compelling evidence reveals that for 14 years plaintiff slept on his rights, failing to take any affirmative action to assert them, except to record the contract, the while he also failed to pay taxes, to assert any possessory rights, or to contact the defendant even once about the matter, presently demanding that she convey to him for the bare balance named in the contract, sans any disposition to pay interest thereon, the taxes paid by defendant, or any increment in land values.

The factual situation here appears ideally suited for application of the doctrine of laches, making unnecessary any discussion of the other defenses asserted. In holding as we do we are not unmindful of and have no quarrel with the authorities cited by plaintiff. We simply do not consider such authorities applicable to the facts of this case.

It seems unnecessary to cite any authority at length in support of our conclusion, since the doctrine of laches is familiar to all. We believe that a simple reference to Pomeroy's Equity Jurisprudence, Fifth Edition

(Symons), Vol. 2, Sec. 418 et seq. will invite the reader to a plethoric review of the reasoning and cases appertaining to the doctrine of laches, and that once having examined them, it will become evident that the facts of this case are such as to require the invocation of the doctrine of laches in preclusion of plaintiff's requested relief.

McDONOUGH, C. J., and CROCKETT, WADE and WORTHEN, JJ., concur.