Savery L. NASH, Plaintiff and
Appellant,

v.

CRAIGCO, INC., a Utah Corporation,
Craig A. Knight and Cathy Knight,
Defendants and Respondents.

No. 15216.

Supreme Court of Utah.

Oct. 2, 1978.

David S. Dolowitz of Parsons, Behle &
Latimer, Salt Lake City, for plaintiff and
appellant.

Grant Macfarlane, Jr., Chris P. Wangs-
gard, Salt Lake City, for defendants and
respondents.

ELLETT, Chief Justice:

Plaintiff appeals from a judgment en-
tered by the District Court of Salt Lake
County on a directed verdict dismissing that
portion of plaintiff's complaint praying for
punitive damages.

Plaintiff and Defendant Craig A. Knight
(hereafter defendant) formed a corporation,

and issuance of 1,000 shares of capital stock was authorized. Because of involvement with other businesses, plaintiff did not wish to take shares in the corporation at the time of organization, but by agreement with defendant, paid for an option to purchase 501 of the 1,000 shares of capital stock which had all been issued to defendant.

Plaintiff claims the evidence at the trial indicated that it was the intent of both parties at the time of incorporation that they be "partners" throughout the duration of the venture, plaintiff to provide legal advice and capital, defendant to provide management, and that plaintiff would ultimately have voting control of the corporation. Before plaintiff had exercised his option and without informing plaintiff, defendant, under an alleged claim of right caused the now successful corporation to issue an additional 14,700 shares to himself and his wife in exchange for property that they owned. Several weeks later, when plaintiff attempted to exercise his option, defendant refused to honor the option agreement, and informed plaintiff of the issuance of the additional shares which consequently would dilute plaintiff's interest in the corporation. Plaintiff filed an action alleging that the defendant, as "partner" and general manager, maliciously violated his fiduciary duty to plaintiff, and praying for the District Court to order defendant to convey 501 of the 1,000 shares of capital stock to plaintiff, to force rescission of the exchange of property for the additional shares, and to award punitive damages based upon the breach of fiduciary duty by defendant.

The District Court granted plaintiff's motion for a directed verdict, and ordered defendant to specifically perform the option agreement by issuing 501 shares of stock to plaintiff and to cancel the additional 14,700 issued to defendant and his wife.

The court also granted defendant's motion for directed verdict on the issue of punitive damages, ruling as a matter of law that there was no evidence of malice. Plaintiff appeals on this latter portion of the judgment, arguing that the evidence presented a factual issue with respect to malice on the part of defendant, and plaintiff was entitled to have the jury consider this issue.

We have reviewed the evidence and find that reasonable minds could differ in deciding whether defendant acted wilfully and maliciously in issuing the 14,700 shares of stock, and whether he did so with the intent to injure the plaintiff.

The only issue raised is whether punitive damages can be allowed in an equitable proceeding where relief other than financial is sought.

The trial court ruled that the defendant wrongfully increased the number of shares of stock in the corporation from 1,000 of which 501 was to be delivered to Nash, upon exercise of an option which he held, by some 14,700 shares which were given to the individual defendants. This maneuver completely destroyed the value of Nash's option and prevented him from having control of the corporation as originally agreed. Not only did he make it impossible for Nash to control the corporation, but he even refused to honor the option to take the 501 shares of stock provided for therein.

■ The corporation was organized as a medium through which Nash and Knight as partners could operate. While Knight had control of the corporation he owed a fiduciary duty to deal fairly and openly with Nash. This he failed to do, and even in defiance of the advice of his lawyer that his conduct "would no doubt yield to a lawsuit."

The case was tried to a jury, but the Court took the matters in his own hands and made findings of fact, one of which was that " . . . neither party has acted wilfully, maliciously or in bad faith . . " That finding just cannot be sustained.

■ As to punitive damages in this case, it appears that the question was one for the jury to decide. While Nash never requested a sum of money in the prayer of his complaint, he did ask that the 14,700 shares of stock issued to the defendant be cancelled and that Knight cause the corpora-

tion to issue the 501 shares of stock according to the original agreement. Whether a party gets relief in equity or as a substitute therefor gets money ought not make a difference.

While the cases generally hold that the amount of punitive damages must bear some reasonable relation to the amount of actual damages awarded, this is not necessarily true. In a tort action of defamation where the charge is not actionable per se, no cause of action can be established unless and until there is a finding of special damages from proof adduced, hence there can be no punitive damage in such cases unless there is an actual financial damage.

In *Prince v. Brooklyn Daily Eagle*[1] it was said:

A person may be of such high character that the grossest libel would damage him none; but that would be no reason for withdrawing his case from the wholesome, if not necessary, rule in respect of punitive damages. It is in such cases that the rule illustrates its chief value and necessity.

In the case of *Samuels v. Evening Mail Ass'n*[2] in the dissenting opinion the judge said:

The plaintiff in an action of libel gives evidence of malice whenever he proves the falsity of the libel. It becomes, then, a question for the jury whether the malice is of such a character as to call for exemplary or punitive damages; and that question is not to be taken away from the jury because the defendant gives evidence which tends to show that there was, in fact, no actual malice. When he gives no such evidence it is the duty of the court to say to the jury that, upon proof of the falsity of the libel, the plaintiff is entitled to exemplary damages in their discretion. (*Tillotson v. Cheetham*, 3 Johns., 56; and see opinion of KENT, Ch.J., in same case; *Taylor v. Church*, 8 N.Y. 452, where the rule of *Tillotson v.*

*Cheetham* is approved; *Hunt v. Bennett*, 19 N.Y. 173.) But where he gives evidence tending to prove the absence of actual malice, then it is the duty of the judge to submit to the jury the question, as one of fact, whether such malice existed in the publication. This is what the learned judge did on the trial of this case; and I think it is a mistake to say that there was no evidence calling for such a charge.

Upon appeal to the court of appeals the dissenting opinion was made the opinion of the court.[3]

Our sister state of Idaho had the question raised in the case of *Village of Peck v. Denison*[4] and held that punitive damages may be awarded when the plaintiff only seeks equitable relief. There the plaintiff sought to enjoin the defendants from interfering with the use of water and to quiet title to the same. The trial court gave a judgment which included $6,000 punitive damages but no actual damages. At pages 314 and 315 of the Pacific Reports the court said:

The absence of a showing of actual damages need not bar an award of punitive damages, for such a showing is not a talismanic necessity. The reason for such a requirement is that it first insures that some legally protected interest has been invaded. It prevents the assessment of punitive damages against one who may have caused damage without legal injury. There is no reason why an award of equitable relief may not fulfill this same function, for in either case it is necessary first to show an invasion of some legally protected interest. The Village plainly has done so in this case.

In *Haskins v. Shelden*[5] the Supreme Court in affirming the judgment (except as to attorney fees) cited McCormick on Damages (Sec. 83 of the Hornbook series) as follows:

1. 16 Misc. 186, 37 N.Y.S. 250 (1896).

2. 9 Hun. 288 at 294 (1876).

3. 75 N.Y. 604.

4. 92 Idaho 747, 450 P.2d 310 (1969).

5. Alaska, 558 P.2d 487 (1976).

[I]t seems desirable to recognize the principle that, if a cause of action is found to exist by the jury, in a case where 'actual' damage is not an essential element of the cause of action, then, if the necessary culpability on defendant's part be established, a verdict for exemplary damages is proper, though the award of other damages is nominal or absent entirely. It may well be . . . that in a given case the plaintiff has proved the *existence* of substantial pecuniary loss, but the evidence fails to fix the amount of that loss with sufficient definiteness to meet the law's standard of certainty. Does this establish a cause of action independent of punitive damages? As a matter of practical justice, it would seem to present a situation where, in cases of malice or recklessness, the requirement of certainty might well be relaxed as against a culpable wrongdoer by allowing a substantial recovery in the form of exemplary damages, and several decisions support the view that, *where the fact of substantial damage is established, though not the amount, punitive damages may be given.*

And then said:

■ Appellants contend that punitive damages cannot be awarded unless an award of actual damages is first made. This being so, they argue that appellee Shelden cannot be allowed to recover punitive damages because she did not recover any actual compensatory damages. In response appellees argue that the judgment entitling appellee Shelden to recovery of the tractor is equivalent to the award of actual damages that is normally required.

On the subject of compensatory damages as a prerequisite to the award of punitive damages, McCormick notes that:

The instant case fits exactly within the second principle announced by McCormick. Appellee Shelden originally sought to recover the value of the tractor from appellant Haskins on a conversion theory on a breach of warranty to defend title theory. The trial court determined that sufficient evidence had not been presented to warrant sending the case to the jury on either of these theories. Specifically the court ruled that there was not sufficient evidence presented as to the value of the tractor. However, the court did rule that the case could go to the jury for recovery of the tractor on a replevin or claim and delivery theory.

It is important to note that the trial judge specifically instructed the jury that it could not return a verdict against Haskins for punitive damages unless it was satisfied that actual damages had been shown.

Other cases permitting punitive damages where only nominal damages or no damages are awarded are as follows:

*McClung etc. v. Thomas*, 226 Md. 136, 172 A.2d 494 (1961).

*Winkler v. Hartford, etc.*, 66 N.J.Super. 22, 168 A.2d 418 (N.J.App.Div.1961); cert. denied 170 A.2d 544.

*Barber v. Hohl*, 40 N.J.Super. 526, 123 A.2d 785 (1956).

Many cases hold that where there is shown to be damages although no judgment is, or can be given therefor punitive damages may be awarded. See the Annotation in 17 A.L.R.2d at p. 539.

■ The question of whether or not punitive damages can be given and the amount thereof should be determined from the nature and type of the wrongful conduct rather than on the amount of money awarded as actual damages since the purpose of the award is to teach the offender not to repeat the wrong, and to be a warning to others that such conduct is not to be tolerated.

The judgment holding as a matter of law that punitive damages can not be in this case, is reversed, and the case is remanded for the purpose of ascertaining whether such damages should be awarded and the amount thereof. Otherwise the judgment is affirmed.

The appellant is awarded his costs.

MAUGHAN and GORDON R. HALL, JJ., concur.

CROCKETT, Justice (Concurring with comments).

I concur with the main opinion and with the reasoning and the authorities cited therein. But I add the following comments about the controversial issue as to whether there can be an award of punitive damages unless there is an award of compensatory damages.

Correlated to the ideas expressed in the main opinion as to the purpose of punitive damages is the proposition that where a defendant has been guilty of such reprehensible conduct as to justify the imposition of punitive damages, I do not see how justice is served by permitting him to escape responding therefor, nor why a plaintiff so injured should be denied appropriate recovery, merely because the remedy for the wrong may be equitable rather than an award of compensatory damages.

There is another aspect of the law of this state which gives support to the ruling of the main opinion. Our Constitution, Sec. 19 of Art. VIII, provides that "There shall be but one form of civil action, and law and equity may be administered in the same action." Pursuant to that provision and the adjudications of this Court thereunder the trend of our law is and has been toward the abolition of distinctions between law and equity. This is particularly true since the adoption of our new Rules of Civil Procedure to the effect that the Court shall grant whatever relief the evidence shows a party is entitled to.[1]

These are additional reasons why I am in agreement with the proposition that the question, whether there should be an award of punitive damages and the amount thereof should depend on the nature of the wrong and not upon an arbitrary, and what seems to me to be an artificial, barrier thereto because of the nomenclature of the cause of action.

WILKINS, Justice (dissenting):

I respectfully dissent.

Though there may have been a question for the jury on the issue of malice, it is my opinion that plaintiff was not prejudiced by the Court's ruling. Punitive damages are improper in this case. Plaintiff prayed for specific performance of the option agreement and conveyance of his 501 shares. He has not pled nor proved any actual or compensable damages.

This Court has consistently held that punitive damages must bear a reasonable relationship to actual damages suffered.[1] Requiring as a prerequisite to an award of punitive damages that a party demonstrate the harm he has suffered which entitles him to an award of actual damages insures that the courts will have a standard by which to measure the reasonableness of an award of punitive damages. With no actual damage award to consider, the major factor used in determining the reasonable relationship of an award of punitive damages to the wrongful party's conduct would be eliminated.

But the underlying reason for denying punitive damages where no compensatory damages have been pled or proved is more fundamental than the above rule. Plaintiff sought the equitable remedy of specific performance and did not seek compensatory damages for breach of the option contract.

Had plaintiff prayed for such damages in the alternative, the Court could not have granted *both* the legal remedy (money damages for the value of the shares) *and* the equitable remedy (the shares themselves), since that would result in double recovery by plaintiff. Punitive damages are part of the legal remedy and should not be granted in addition to equity.

1. See e. g., U.R.C.P. Rule 54(c).

1. *Kesler v. Rogers*, Utah, 542 P.2d 354 (1975); *Prince v. Peterson*, Utah, 538 P.2d 1325 (1975); *Monter v. Kratzers Specialty Bread Co.*, 29 Utah 2d 18, 504 P.2d 40 (1972); *Evans v. Gaisford*, 122 Utah 156, 247 P.2d 431 (1952); *Maw v. Weber Basin Water Conservancy District*, 20 Utah 2d 195, 436 P.2d 230 (1968); *Graham v. Street*, 2 Utah 2d 144, 270 P.2d 456 (1954).

Having prayed for equity, plaintiff must do equity.[2] Punitive damages are contrary to the principles of equity jurisprudence, for equity abhors a penalty or forfeiture[3] and seeks to restore the parties to their status quo.[4] By seeking punitive damages, plaintiff not only seeks a penalty against defendant, but recovery for himself of something in addition to the restoration of his rights. Having invoked the most benignant powers of courts of justice, plaintiff should not be successful in demanding, in addition to equity, a punishment which "is sicklied o'er" with vengeance.[5]

2. *Glenn v. Player*, 7 Utah 2d 428, 326 P.2d 717 (1958); *Weyant v. Murphy*, 78 Cal. 278, 20 P. 568 (1889); *Kelley v. Clark*, 23 Idaho 1, 129 P. 921 (1913); *Hall v. Lommasson*, 113 Mont. 272, 124 P.2d 694 (1942); *Winthrop v. Huntington*, 3 Ohio 327; *Dickerson v. Murfield*, 173 Or. 662, 147 P.2d 194 (1944).

3. *Gibson v. River Farms Co.*, 49 Cal.App.2d 278, 121 P.2d 504 (1942); *Roshek Realty Co. v. Roshek Bros. Co.*, 249 Iowa 349, 87 N.W.2d 8 (1957); *Johnston v. Gilbert*, 234 Or. 350, 382 P.2d 87 (1963).

4. *Kam Chin Chun Ming v. Kam Hee Ho*, 45 Haw. 521, 371 P.2d 379 (1962); *Sjulin v. Clifton Furniture Co.*, 241 Iowa 761, 41 N.W.2d 721 (1950); *York v. Cole*, 254 N.C. 224, 118 S.E.2d 419 (1961).

5. See *Livingston v. Woodworth*, 15 How. 546, 14 L.Ed. 809 (1853); *Given v. United Fuel Gas Co.*, 84 W.Va. 301, 99 S.E. 476 (1919); *Superior Constr. Co. v. Elmo*, 204 Md. 1, 104 A.2d 581 (1954); *Bush v. Gaffney* (Tex.Civ.App.), 84 S.W.2d 759 (1935).